[No. B075104. Second Dist., Div. One. Apr. 8, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID MICHAEL MURRAY, Defendant and Appellant.

**COUNSEL**

Jonathan B. Steiner and Kenny T. Hayashi, under appointments by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Robert Carl Schneider and Akram A. Awad, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ORTEGA, J.**—David Michael Murray appeals from the judgment entered following his resentencing resulting from a remand after his earlier appeal. Murray was sentenced for several theft-related felonies and misdemeanors. Murray received an aggregate sentence exceeding that which could have been imposed under the double-the-base-term (DBT) limitation (Pen. Code, § 1170.1, subd. (g))[1] had all the charges been felonies. We agree with Murray that the DBT aggregate sentence limitation applies to mixed felony and misdemeanor sentences, and the trial court erred in imposing a greater sentence. We modify the sentence and in all other respects affirm the judgment.

### FACTS AND PROCEDURAL HISTORY

A jury convicted Murray of four felony counts of petty theft with a prior theft related conviction (§§ 484, subd. (a), 486, 488, 666) (counts 5, 7, 8, and 11), three counts of felony grand theft (§§ 484, subd. (a), 487, subd. (a), 489, subd. (b)) (counts 6, 9, and 12), and one felony count (count 4) and four misdemeanor counts (counts 1, 2, 3, and 10) of defrauding an innkeeper (§ 537, subd. (a)(2) and (a)(1).) The trial court found Murray suffered six prior felony convictions (§§ 667.5, subd. (b), 1203, subd. (e)(4).)

Murray originally received an aggregate ten-year sentence: a three-year principal or base term on count 11; a three-year subordinate term on five of the other felony counts, composed of a consecutive one-third of the two-year middle term, or eight months, of which four months was stayed, for a total of four months, on count 4, and four consecutive one-third of the two-year middle terms, or eight months each, on counts 5-8; two consecutive one-year terms for two prior felony convictions for which he served prison terms; and two years, composed of four consecutive six-month terms, for the four misdemeanors.

In an earlier opinion we struck the prior felony conviction enhancements due to evidentiary insufficiency. In all other respects we affirmed the judgment. (*People* v. *Murray* (Dec. 29, 1992) B055738 [nonpub. opn.].) We remanded the case for the trial court to prepare a new abstract of judgment.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

On remand, the trial court rejected Murray's claim, also made in his earlier appeal, that his aggregate sentence could not exceed six years, or double his three-year principal term. The trial court imposed an aggregate eight-year sentence, identical to the original sentence except striking the prior felony conviction enhancements.[2]

## ISSUE

Murray contends the trial court erred in refusing to apply the DBT aggregate sentence limitation to his total sentence.

## DISCUSSION

Section 1170.1 generally governs the methods of and limitations on imposing consecutive sentences for multiple felony convictions. The DBT aggregate sentence limitation is contained in subdivision (g)(1) and (g)(2), both of which provide that, except for various exceptions not applicable here, "[t]he term of imprisonment shall not exceed twice the number of years imposed by the trial court as the base term . . . ." The issue before us is whether the DBT limitation applies to an aggregate sentence composed of mixed felony and misdemeanor sentences.

Murray argues that failing to apply the DBT violates equal protection by treating similarly situated defendants differently; results in the imposition of disproportionately cruel and unusual punishment; violates public policy; and

---

[2]Because the original sentencing judge had been elevated to the Court of Appeal, a different judge presided over Murray's case upon remand. At the postremand hearing, the trial court first struck the two prior felony conviction enhancements, thus reducing Murray's aggregate sentence from ten to eight years. The trial court then denied Murray's "MOTION FOR REDUCTION OF SENTENCE ON RESENTENCING," stating that "the [DBT] limitation does not apply to misdemeanors. To the extent that that is what the defendant is requesting, his request is denied." Murray's counsel then asked the trial court to consider making the subordinate terms concurrent. The prosecutor objected, stating: "I'm not sure at this point the Court has jurisdiction but in any case I believe the original sentencing judge found good cause to run them consecutively. I don't see any change such that that motion should be granted now." The trial court replied: "I have those problems as well. I will tell you candidly it is my policy to run . . . misdemeanor sentences concurrent to . . . felony sentences; however, I did not do this sentencing . . . . I am loath to substitute my judgment for [the original sentencing judge]'s judgment. I think that he did what he thought was appropriate. I really am reluctant to decide now what was appropriate before that sentencing judge." Murray does not challenge the trial court's refusal to resentence him anew. The People do not claim the trial court lacked jurisdiction to reduce Murray's aggregate sentence to six years, an argument, as noted above, he made in his original appeal. In any event, Murray properly may raise this issue now. The trial court possessed jurisdiction to consider Murray's argument because, if correct, any aggregate sentence exceeding six years would be illegal because longer than permitted by law. An excessive sentence may be attacked at any time. (*In re Harris* (1993) 5 Cal.4th 813, 839 [21 Cal.Rptr.2d 373, 855 P.2d 391].)

is contradicted by statutory language. We reject Murray's cruel and unusual punishment and public policy arguments, but accept his equal protection and statutory language arguments.

■ We may quickly dispatch Murray's cruel and unusual punishment argument. "[A] statutory punishment may violate the constitutional prohibition not only if it is inflicted by a cruel or unusual method, but also if it is grossly disproportionate to the offense for which it is imposed. . . . [A] punishment may violate the . . . constitutional prohibition 'if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' " (*People* v. *Dillon* (1983) 34 Cal.3d 441, 478 [194 Cal.Rptr. 390, 668 P.2d 697], fn. omitted, quoting *In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921].) As stated in *People* v. *Powell* (1985) 166 Cal.App.3d Supp. 12, 17 [212 Cal.Rptr. 454], relied on by Murray to support his due process argument, "[m]easured against the applicable standard, it cannot be said that [Murray]'s [eight-year] term, imposed pursuant to his conviction on [twelve] counts of grand theft, [petty theft with prior theft related convictions, felony and misdemeanor defrauding an innkeeper, by one with six prior felony convictions,] is 'so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' Thus, we reject this contention."

■ Likewise, we dispatch Murray's claim that failing to apply the DBT limitation violates public policy because, since those who commit theft crimes involving greater amounts of property charged as felons would receive shorter sentences than those whose crimes involve smaller amounts of property and charged as misdemeanants, such a policy would encourage potential thieves to " 'take more so as to get less.' " This, Murray claims, would violate the supposed public policy to encourage thieves to take less rather than more. However, the greater public policy demanding that those who commit multiple crimes receive greater punishment along with their greater culpability far outweighs any benefits under Murray's proposed policy. Moreover, prosecutors retain discretion to charge felonies or misdemeanors as appropriate. That discretion is not unfettered, as the sentencing judge would impose sentence only after considering all aggravating and mitigating factors and the parties' arguments.

■ Murray's argument that the statutory language supports application of the DBT limitation to mixed felony and misdemeanor sentences has merit. As quoted above, both subdivisions (g)(1) and (g)(2) of section 1170.1 state: "The term of *imprisonment* shall not exceed twice the number of years imposed by the trial court as the base term . . . ." (Italics added.) Murray

points out that other statutes define "imprisonment" as time spent in custody, regardless of the facility in which it is served or the class of crime for which it is imposed. ("When a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, it is a misdemeanor . . . ." (§ 17, subd. (b)); ". . . every offense declared to be a midsemeanor is punishable by imprisonment in the county jail . . . ." (§ 19); various forms of contempt are punished by "imprisonment" (Code Civ. Proc., § 1218).) The People do not dispute that "imprisonment" as used in section 1170.1, subdivision (g) applies to custody time imposed on felonies and misdemeanors. (See *Plotitsa* v. *Superior Court* (1983) 140 Cal.App.3d 755, 762 [189 Cal.Rptr. 769] ["where a word or phrase has a well-known and definite legal meaning it will be construed to have the same meaning when used in a statute. [Citation.]"].)

In contrast, section 1170.1, subdivision (a), which contains the one-third the middle term limitation on individual consecutive subordinate sentences and the five-year overall limitation on subordinate terms, is expressly limited to situations where "any person is convicted of two or more *felonies* . . . ." (Italics added.) Earlier cases held that section 1170.1, subdivision (a)'s sentence limitations do not apply to misdemeanor or mixed felony/misdemeanor sentences. (*In re Eric J.* (1979) 25 Cal.3d 522, 537 [159 Cal.Rptr. 317, 601 P.2d 549] ["the Legislature clearly indicated its intent that the aggregation provisions of . . . section 1170.1, which limit consecutive terms to one-third of the middle determinate term, apply only in imposing sentence for felonies . . . ." (although holding that the juvenile law compels the conclusion that that limitation does apply to determining the maximum confinement period for juvenile mixed felony/misdemeanor adjudications)]; *In re Luis H.* (1986) 187 Cal.App.3d 546, 549-550 [231 Cal.Rptr. 722] [although section 1170.1, subdivision (a)'s one-third the middle term limitation applies to mixed felony/misdemeanor juvenile adjudications (as compelled by in *In re Eric J., supra,* 25 Cal.3d at pp. 536-538), section 1170.1, subdivision (g)'s DBT limitation does not]; *People* v. *Hartsfield* (1981) 117 Cal.App.3d 504, 508-509 [172 Cal.Rptr. 794] and *People* v. *Fowler* (1980) 109 Cal.App.3d 557, 567-568 [167 Cal.Rptr. 235] [section 1170.1, subdivision (a)'s one-third the middle term limitation does not apply to misdemeanor sentences imposed as part of mixed felony/misdemeanor sentencing].)

The People essentially concede the plain statutory language indicates the Legislature chose not to apply the sentencing limitations in section 1170.1, subdivision (a) to misdemeanor sentences, either alone or as part of mixed felony/misdemeanor sentences, but did choose to apply the DBT limitation in subdivision (g) to mixed felony/misdemeanor sentences. However, relying

on established statutory construction rules that we must read the statutory scheme as a whole, and reject a literal interpretation, to effectuate the Legislature's purpose and avoid an unintended result (*People* v. *Davis* (1981) 29 Cal.3d 814, 828-829 [176 Cal.Rptr. 521, 633 P.2d 186]; *J. R. Norton Co.* v. *Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1, 36-37 [160 Cal.Rptr. 710, 603 P.2d 1306]), the People essentially argue we should read subdivision (a)'s "felony" limitation into subdivision (g) to effectuate the Legislature's presumed intent to punish those who commit more crimes more harshly, in accord with their greater culpability, than those who commit fewer crimes.

Three reasons compel us to reject the People's argument. First, the established statutory construction rules apply only when statutory language is not facially clear. As noted, the language here is clear. Second, although one might assume a rational punishment scheme would ensure that those who commit more crimes are punished more harshly, in accord with their greater culpability, than those who commit fewer crimes, the Legislature, for reasons which escape us, essentially created a statutory scheme which does precisely the opposite. Under section 1170.1, those who commit more crimes receive substantially discounted punishment for their first few additional crimes through the one-third the middle term limitation on the length of each subordinate term, and receive no punishment at all for their remaining crimes, through the five-year limitation on subordinate terms and the overall DBT limitation on aggregate terms. We think it reasonable that such an Alice in Wonderland scheme could exempt misdemeanor sentences when coupled with felony sentences from two of the sentence limitations, yet apply an outer limit on their length through the DBT limitation, if for no other reason than proportionality. Third, as pointed out by Murray, equally established rules of statutory construction require that ambiguities in penal statutes be construed against the People and in favor of defendants. (*People* v. *Davis, supra,* 29 Cal.3d at p. 828.) Thus, we agree that statutory language supports Murray's claim.

We also agree with Murray that failing to apply the DBT limitation to mixed felony/misdemeanor sentences violates equal protection. While the cases cited above distinguished between the sentencing limitations in subdivisions (a) and (g) on statutory grounds, several cases also have addressed the equal protection argument, although in distinguishable factual and legal contexts. *In re Eric J., supra,* 25 Cal.3d 522, held that equal protection was not violated by not applying the one-third the middle term limitation in subdivision (a) to mixed felony/misdemeanor juvenile adjudications because of the different penological approaches governing adult and juvenile systems. (*Id.* at pp. 528-533.)

*People* v. *Powell, supra,* 166 Cal.App.3d Supp. 12, held that equal protection required that the sentencing limitations in subdivisions (a) and (g) be applied to consecutive misdemeanor sentences, at least where the misdemeanors were alternative felony/misdemeanors prosecuted as misdemeanors (wobblers). (*Id.* at pp. Supp. 17-26.)

*In re Valenti* (1986) 178 Cal.App.3d 470 [224 Cal.Rptr. 10] rejected *Powell's* reasoning and held that subdivisions (a) and (g) did not apply to multiple misdemeanor sentences. Because much of its analysis is relevant to the facts before us, we quote the *Valenti* court at length:

"Petitioner contends that misdemeanants and felons are similarly situated in that both classes of inmates are punished for crimes that they have committed [citation].) There is little doubt that in terms of confinement, at least from the vantage point of the prisoner, the loss of liberty is equally drastic regardless of one's being an inmate of a county jail or an inmate of a state prison. [Citation.] There is, however, a significant difference in the quality and duration of punishment, as well as in resultant long-term effects, which are brought about by a conviction for a felony as opposed to that for a misdemeanor. [Citation.]

"When a misdemeanant has finished serving his sentence, he leaves with neither further obligation nor disability. The conviction for a misdemeanor involves no further loss of civil rights. [Citation.] Not so for the typical felon: he will generally spend the three years following his release from prison in the 'constructive' custody of the Department of Corrections [citations] and may be reimprisoned were he to violate the terms of parole. [Citations.]

"A felon is uniquely burdened by a diverse collection of statutorily imposed disabilities long after his release from prison. [Citations.] For example, he is denied the right to vote during the period of his parole. [Citations.] Moreover, a felon may not '. . . engage in certain businesses [citation]; must register with local law enforcement authorities if his offense related to certain sex charges [citations]; loses the right to possess arms [citation]; and, if he testifies in court, may be impeached on the basis of his prior felony conviction [citation]. . . .' [Citation.]

"Petitioner does not claim that the term imposed upon him by the municipal court was unjust. Petioner's demonstrated pattern of disdain for the laws of society is manifest from the record before this court. The state has a compelling interest to protect its law abiding citizens by discouraging the

criminal element from repeatedly violating its laws. [Citations.] We conclude that the governmental objectives of section 1170.1 are inapplicable to this case." (*In re Valenti, supra,* 178 Cal.App.3d at pp. 475-476.)[3]

Later, the court in *People v. Hibbard* (1991) 231 Cal.App.3d 145, 147-149 [282 Cal.Rptr. 351] followed *Valenti* and denied an equal protection challenge to consecutive misdemeanor sentences imposed without consideration of the sentencing limitations in section 1170.1.

As Murray points out, he suffered felony convictions and thus incurred all the penalties associated with felony convictions. In addition, he received an aggregate sentence greater than that he would have received had he been convicted only of felonies. Thus, unlike the misdemeanants in *Valenti* and *Hibbard,* Murray received both long-term felony penalties and a longer term of imprisonment. Murray argues there is no rational reason to treat him differently than one convicted only of felony offenses. He also argues his longer sentence cannot be justified by any lack of felony penalties, as was true in *Valenti* and *Hibbard,* because he incurred such penalties. Moreover, the *Hibbard* court noted its analysis was limited to multiple misdemeanor sentences, and did not address a mixed felony/misdemeanor sentence, despite *Hibbard*'s felon status based on a conviction in another case. (*People v. Hibbard, supra,* 231 Cal.App.3d at p. 149, fn. 8.)

We agree with Murray. The People respond only by several analogies which point out the counterintuitive result that, under the statutory scheme, those committing more offenses receive disproportionately lenient sentences compared with their greater culpability. We share the People's frustration, but that is a consequence of section 1170.1's sentencing limitations. ▮ Moreover, because the right to personal freedom is a fundamental interest, any measure adversely affecting that right must be viewed with strict scrutiny. (*People v. Olivas* (1976) 17 Cal.3d 236, 251 [131 Cal.Rptr. 55, 551 P.2d 375]; *Sail'er Inn, Inc. v. Kirby* (1971) 5 Cal.3d 1, 16-17 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351].) ▮ Under this strict standard of review, we agree with Murray that the trial court denied him equal protection by not applying the DBT limitation to Murray's aggregate sentence.

▮ Neither below nor on appeal did Murray seek a remand for resentencing. Moreover, the trial court clearly desired to impose the maximum

---

[3]We note that one now may be impeached with evidence of conduct which resulted in misdemeanor convictions, although, assuming a hearsay objection is made, not with evidence of the conviction. (*People v. Wheeler* (1992) 4 Cal.4th 284, 288, 295-300 [14 Cal.Rptr.2d 418, 841 P.2d 938].) We think this change does not alter the force of the quoted passage from *Valenti.*

possible sentence, a sentiment Murray richly earned. Thus, remand is unnecessary. (*People* v. *Avalos* (1984) 37 Cal.3d 216, 233 [207 Cal.Rptr. 549, 689 P.2d 121].) We modify the judgment to strike that portion of the sentence exceeding the DBT limitation, and, as modified, affirm the judgment.

## DISPOSITION

We modify the judgment to strike the sentences imposed on counts 1-3 and 10, thus leaving an aggregate sentence of six years. In all other respects, we affirm the judgment. The trial court is ordered to prepare a new abstract of judgment reflecting the modified sentence and forward it to the Department of Corrections.

Spencer, P. J., and Vogel (Miriam A.), J., concurred.