Filed 6/10/16

CERTIFIED FOR PARTIAL PUBLICATION[*]

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E063630 |
| v. | (Super.Ct.No. FSB1405350) |
| CHARLES LEE BROWN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. J. David Mazurek, Judge. Affirmed.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Randall D. Einhorn and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part 1 of the Legal Analysis.

1

Defendant and appellant Charles Lee Brown asserts that an ambiguous jury verdict form mandates reversal of his conviction on one count of felony resisting or attempting to deter an executive officer in the performance of his duties, in violation of Penal Code section 69, and resentencing solely on his conviction on one count of misdemeanor resisting a peace officer in violation of Penal Code section 148, subdivision (a).[1] In the alternative, he contends that the full term consecutive sentence imposed for the misdemeanor count was not authorized by law.

We will affirm both the felony conviction and the sentence.

PROCEDURAL HISTORY

An information alleged that on or about March 8, 2014, defendant committed two counts of resisting or attempting by threats and violence to deter an executive officer, Michael Johnson, from performing a lawful duty. (§ 69.) It also alleged that defendant had served two prior prison terms, within the meaning of section 667.5, subdivision (b).[2] A jury convicted defendant of the lesser included offense of misdemeanor resisting arrest (§ 148, subd. (a)(1)) as to count one and, as discussed below, returned an arguably ambiguous guilty verdict as to count 2. The prior prison term allegations were found true in a separate bench trial.

The court imposed the upper term of three years as to count 2, a consecutive one-year term as to count 1, and a consecutive one-year term for the prior prison term

---

[1] All statutory citations refer to the Penal Code.

[2] The information was later amended with respect to the second prior. No written amended information appears in the record on appeal.

2

enhancement.[3]  This term was to be served in county jail prison consecutive to the term defendant was already serving.

Defendant filed a timely notice of appeal.

FACTS

On March 8, 2014, defendant was an inmate in the San Bernardino County jail. That evening, Deputy Johnson and other deputies conducted a surprise search, or "shakedown," of cells to search for contraband.  The procedure involved each inmate being removed from his cell, subjected to a body search, and then moved to a secure location while his cell was searched.

When defendant was ordered out of his cell, he did not comply with Johnson's order to put his hands on his head.  Johnson repeated his order several times, but defendant did not comply.  At one point, he moved his hands toward the waistband of his pants.  Fearing that defendant had a weapon, Johnson decided to force him to the ground. Defendant grabbed at the bars of the cell and had to be forcibly handcuffed by Johnson and two other deputies.  This interaction was the factual basis for count 1.

Defendant suffered a laceration to his chin in the altercation.  As he was being taken to the infirmary, defendant made a number of statements to Johnson that Johnson took as threats:  Defendant told Johnson to watch himself while he was in the jail because defendant would take his head off; that he had better protect himself every time defendant walked through; and that if defendant ever saw Johnson outside the jail, Johnson had

---

[3]  At sentencing, it was agreed that the two convictions constituted a single prison term.

3

better be armed with a gun. When Johnson asked if defendant was threatening him, defendant said that he was. These threats were the factual basis for count 2.

The incident was video recorded. The recording was played for the jury.

LEGAL ANALYSIS

1.

VERDICT FORM 2-A ADEQUATELY REFLECTS THE JURY'S INTENTION TO CONVICT DEFENDANT OF A FELONY ON COUNT 2

*Background.*

Section 69 provides: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment . . . in a county jail not exceeding one year, or by both such fine and imprisonment." The statute sets forth two separate ways in which the offense can be committed: "The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty." (*In re Manuel G.* (1997) 16 Cal.4th 805, 814.)

Here, count 1 was based on defendant's physical resistance to Johnson, while count 2 was based on the threats he uttered after having been taken to the ground. The jury was so instructed. It was also instructed that resistance without using force or

4

violence constitutes the misdemeanor of resisting a peace officer in violation of section 148, subdivision (a).

As to count 1, the jury was instructed that if it unanimously found defendant not guilty of the charged offense, it could find him guilty of the lesser offense, but that the court could accept a verdict of guilty of the lesser offense only if the jury returned a unanimous verdict of not guilty as to the charged offense. The jury was instructed as to four possible verdicts on count 1, and was directed to use verdict forms 1-A through 1-D, as appropriate. As to count 2, the jury was instructed to use verdict form 2-A if it found defendant guilty and to use verdict form 2-B if it found him not guilty.

At the conclusion of its deliberations, the jury returned verdict form 1-C, finding defendant guilty of violating section 148, subdivision (a)(1). It did not return verdict form 1-B, finding defendant not guilty of the charged offense in count 1. It also returned verdict form 2-A. However, the crime described on that form was "resisting [an] executive officer, in violation of Penal Code section 69, *as charged in Count One of the Information.*"[4] (Italics added.) Although the court clerk read the verdicts verbatim, neither the court nor either attorney appeared to notice the discrepancy in verdict form 2-A or that the jury had not returned a verdict of not guilty on the charged offense in count 1, and the jury was discharged. The record of the sentencing hearing reflects that the court and counsel discussed the verdict forms off the record. Without describing the details of

---

[4] The jury had also been instructed, with respect to count 2, that the charged offense was "trying to prevent" an executive officer from performing his duty. Count 1 was "resisting" an executive officer.

5

that discussion, the court stated, "But I think we are all on the same page with respect to Count 1 is a misdemeanor; Count 2 is the felony."

*The Parties' Contentions.*

Defendant contends that the court's failure to obtain an unambiguous verdict as to count 2 requires that his conviction on that count be vacated, along with the prior prison term finding (which applied only to count 2), and the matter remanded for resentencing on count 1.[5] The Attorney General, on the other hand, argues that because the jury was told that verdict form 2-A was the form it was to sign if it found defendant guilty on count 2, the verdict form clearly reflects the jury's intention to convict him on that count. She contends further that the record reflects that the court and counsel agreed that there was a clerical error in verdict form 2-A and agreed how to resolve it, i.e., that the felony guilty verdict referred to count 2. She also contends that defendant's failure to object to the form of the verdict forfeits the issue on appeal.

*Defendant's Contention May Be Addressed on Appeal.*

"An objection to jury verdict forms is generally deemed waived if not raised in the trial court." (*People v. Toro* (1989) 47 Cal.3d 966, 976, fn. 6, overruled on other grounds in *People v. Guiuan* (1998) 18 Cal.4th 558, 568, fn. 3; see *People v. Jones* (2003) 29

---

[5] Although defendant mentions the fact that the jury failed to return a verdict of not guilty of violating section 69 as to count 1, as the court instructed, he does not contend that this error invalidates his conviction on the lesser included offense in count 1. And, indeed, it does not. Rather, although it is error for a trial court to accept a guilty verdict on a lesser included offense unless the jury also returns a not guilty verdict on the charged offense, the only ramification of the error is that the implied acquittal rule applies, with the result that double jeopardy bars retrial on the charged offense. (*People v. Fields* (1996) 13 Cal.4th 289, 299, 310-311.)

Cal.4th 1229, 1259 [failure to object to assertedly ambiguous verdict form]; *People v. Bolin* (1998) 18 Cal.4th 297, 330 [defendant forfeited claim of error related to verdict form that contained incorrect code section reflecting prior serious felony conviction on a § 667, subd. (a) finding and, in any event, the erroneous form used by the jury to reflect their finding was not prejudicial].)  However, a reviewing court may in its discretion choose to consider an issue that implicates the defendant's constitutional rights and when defense counsel was arguably ineffective for failing to raise it below.  (*People v. Abbaszadeh* (2003) 106 Cal.App.4th 642, 649-650; see *People v. Osband* (1996) 13 Cal.4th 622, 689 [noting that, pursuant to section 1259, a "claim of instructional error may be considered for [the] first time on appeal if 'the substantial rights of the defendant were affected' by the asserted error"].)

Here, defendant did not object to the defect in the challenged verdict form, but urges that the error affected his constitutional right to a unanimous verdict.  He contends that rather than an ambiguous verdict on count 2, there was in fact *no* verdict returned on count 2.  We disagree with this characterization; as we discuss below, it is clear that the jury understood that by returning verdict form 2-A, it was returning a guilty verdict on count 2, despite the clerical error in that form referring to count 1.  Nevertheless, because it is arguable that defense counsel was ineffective for failing to seek correction of the verdict form and/or for failing to object, rather than to stipulate, that the felony conviction referred to count 2, we will address the merits of the contention.

*The Verdict Form Adequately Reflects the Jury's Intention to Convict Defendant on Count 2.*

7

"'""A verdict is to be given a reasonable intendment and be construed in light of the issues submitted to the jury and the instructions of the court." [Citations.]' [Citations.] 'The form of a verdict is immaterial provided the intention to convict of the crime charged is unmistakably expressed. [Citations.]'" (*People v. Jones* (1997) 58 Cal.App.4th 693, 710-711.) "[T]echnical defects in a verdict may be disregarded if the jury's intent to convict of a specified offense within the charges is unmistakably clear, and the accused's substantial rights suffered no prejudice." (*People v. Webster* (1991) 54 Cal.3d 411, 447, citing §§ 1258, 1404.)[6] "'There are innumerable authorities which declare that the form of the verdict is immaterial if the intention to convict of the crime charged is unmistakably expressed. [Citations.]' [Citations.] [¶] In *People v. Reddick* [(1959) 176 Cal.App.2d. 806], the court stated: 'No particular form of verdict is required, so long as it clearly indicates the intention of the jury to find the defendant guilty of the offense with which he is charged. It is sufficient if it finds him guilty by reference to a specific count contained in the information. [Citations.]' ([*Id.*] at p. 821.)" (*People v. Bratis* (1977) 73 Cal.App.3d 751, 763-764.)

In *People v. Camacho* (2009) 171 Cal.App.4th 1269, the court found "no difficulty" in determining that the jury intended to find the defendant guilty of second degree robbery as charged in count 2 of the indictment, even though the verdict form

---

[6] Section 1258 provides that the Court of Appeal "must give judgment without regard to technical errors or defects, or to exceptions, which do not affect the substantial rights of the parties." Section 1404 provides: "Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right."

used by the jury referred to carjacking as the charged offense in that count. (*Id.* at pp. 1271, 1273.) The court stated, "This case was tried from start to finish with the understanding defendant was charged with two counts of carjacking and two counts of second degree robbery. Prior to jury selection, the trial court indicated its intent 'to read the information verbatim' and there is no indication the trial court failed to do so. [Fn. omitted.] In his opening statement, the prosecutor informed the jury he would be seeking guilty verdicts for carjacking and robbery of both victims. The jury instruction on intent referred to 'Robbery, as charged in Counts Two and Four' and 'Carjacking as charged in Counts One and Three.' The instruction on the elements of the charged offenses indicated 'defendant is charged in Counts Two and Four' with robbery, and he was 'charged in Counts One and Three' with carjacking.

"In argument to the jury, the prosecutor stated, 'I'm going to start with carjacking which is counts 1 and 3 . . . .' At the end of the opening argument the prosecutor requested guilty verdicts 'for two counts of carjacking, two counts of robbery and a finding the special allegation is true.' Defense counsel made it clear that defendant was charged, as to each [victim], with one count of carjacking and robbery. [¶] The defense sentencing memorandum repeatedly refers to the charge in count two as robbery. The prosecution sentencing memorandum also indicates a repeated understanding that defendant was convicted of robbery in count 2. For purposes of sentencing, neither the parties nor the trial court treated the conviction in count 2 as a conviction of the crime of carjacking; instead, defendant was sentenced for robbery in count 2. . . .

9

". . . The information correctly charged the offense of second degree robbery in count two, the trial court instructed the jury on robbery in count two, the parties' arguments conformed to the information and instructions, and the jury found defendant guilty 'as charged in count 2.' It is evident that the reference to carjacking is a clerical error and the jury convicted defendant of second degree robbery." (*People v. Camacho*, *supra*, 171 Cal.App.4th at pp. 1273-1274.) Accordingly, the court affirmed the conviction. (*Id.* at pp. 1275, 1276.)

The same reasoning applies in this case. The verdict form in question describes the offense charged, a violation of section 69, although it does so in terms inconsistent with the theory relied on at trial for count 2. However, the jury was instructed that although counts 1 and 2 had different elements, each was a violation of section 69. The arguments of counsel also discussed the elements of each count and explained that each count constituted a different method of violating section 69. These facts make it clear that by returning verdict form 2-A, the jury intended to return a verdict of guilty to a charge of violating section 69.

Similarly, although verdict form 2-A referred to count 1, rather than count 2, the circumstances make it clear that the jury knew it was returning a verdict of guilty of violating section 69 as charged in count 2. The jury was instructed that there was a lesser included offense option only as to count 1, and the court explained the various possible verdicts as to count 1, to be returned on the appropriate forms designated verdict forms 1-A through 1-D. As to count 2, the court told the jury that its only options were guilty and not guilty, and that if it unanimously found the defendant guilty on count 2, it should return

10

verdict form 2-A. Accordingly, from the fact that the jury returned a verdict of guilty of the lesser included offense in count 1, there is no rational basis for concluding that it also intended to return a redundant verdict of guilty on count 1 using the verdict form designated for count 2. Given the court's direction to use verdict form 2-A or 2-B for its verdict on count 2, we can also infer from the fact that the jury returned verdict form 2-A that it intended to return a guilty verdict on count 2. Accordingly, the clerical error in verdict form 2-A did not affect any substantial right of defendant, and we may disregard it.

2.

THE CONSECUTIVE SENTENCE ON COUNT 1 WAS NOT UNAUTHORIZED

Section 148, subdivision (a)(1), provides for punishment by a fine not exceeding one thousand dollars, or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment. Here, the court imposed a term of one year, to run consecutive to the term imposed on count 2. Defendant contends that the full term consecutive sentence is not authorized by law. He contends that pursuant to section 1170.1, subdivision (a), the authorized sentence was one-third of that term, i.e., four months.[7]

Section 1170.1, subdivision (a), (hereafter section 1170.1(a)) provides in pertinent part: "Except as otherwise provided by law . . . when any person is *convicted of two or more felonies* . . . and a consecutive term of imprisonment is imposed under Sections 669

---

[7] Defendant did not object to the sentence in the trial court. A sentence that is not authorized by law may be challenged for the first time on appeal, however. (*People v. Scott* (1994) 9 Cal.4th 331, 354.)

11

and 1170, the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term, and any additional term imposed . . . . The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed . . . ." (Italics added.) The California Supreme Court has held that section 1170.1(a) clearly expresses the Legislature's intent that the one-third the middle term limitation applies only to consecutive felony terms (*In re Eric J.* (1979) 25 Cal.3d 522, 537 (*Eric J.*)), and intermediate appellate courts have held that it does not preclude imposition of a full consecutive term for a misdemeanor that is made subordinate to a felony term. (*People v. Erdelen* (1996) 46 Cal.App.4th 86, 91-92; *People v. Murray* (1994) 23 Cal.App.4th 1783, 1789; *People v. Hartsfield* (1981) 117 Cal.App.3d 504, 508.)

Defendant acknowledges these facts, but contends that where, as in this case, sentence is imposed under section 1170, subdivision (h) (hereafter 1170(h)),[8] a different interpretation of section 1170.1(a) is required in order to avoid an absurd result not contemplated by the Legislature. He relies, by analogy, on *Eric J.*, *supra*, 25 Cal.3d 522.

In *Eric J.*, a juvenile court committed a minor to the Youth Authority for a maximum term of three years for burglary and six months for a misdemeanor. The minor

---

[8] Section 1170(h) was enacted as part of the Criminal Justice Realignment Act of 2011 (Realignment Act). (Stats. 2011, ch. 15, § 1; Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 12, § 1.) As pertinent here, it provides: "Except as provided in paragraph (3), a felony punishable pursuant to this subdivision shall be punishable by imprisonment in a county jail for the term described in the underlying offense." (§ 1170(h)(2).) The court sentenced defendant under this provision.

argued as defendant does in this case, i.e., that the aggregate maximum term was erroneously computed by adding the maximum terms prescribed by law for both the felony and misdemeanor counts, and that the court should have imposed only one-third of the maximum term for the subordinate misdemeanor.  The Attorney General countered that section 1170.1(a) expressly applies only to consecutive terms imposed for felony offenses and that the juvenile court properly aggregated the misdemeanor term by imposing the maximum term prescribed by law.  (*Eric J.*, *supra*, 25 Cal.3d at p. 537.) The California Supreme Court agreed with the minor and held that the consecutive term of six months must be reduced to one-third, i.e., two months.  (*Id*. at pp. 525-526, 537.)

The court reasoned as follows:  Welfare and Institutions Code former section 726, as in effect at that time, provided in relevant part that when a minor is removed from the custody of his or her parent or guardian under an order of wardship, the minor may not be held in physical confinement for a period "in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." (Welf. & Inst. Code, former § 726, subd. (c).)  As used in that section, "maximum term of imprisonment" means "the longest of the three time periods set forth in paragraph (2) of subdivision (a) of Section 1170 of the Penal Code . . . ."  (Welf. & Inst. Code, former § 726, subd. (c); see *Eric J*., *supra*, 25 Cal.3d at p. 535, fn. 2.)  Interpreting Welfare and Institutions Code former section 726 to apply Penal Code section 1170.1(a) only to felonies and not to misdemeanors, as urged by the Attorney General, however, "would lead to the following result:  A minor committed for the period of the maximum term for

13

a principal felony offense, and to one-third of the middle term of a 'sixteen months, two years, three years' subordinate felony offense, could be confined for an aggregate maximum period four months shorter than a minor committed for the same principal offense but with a subordinate misdemeanor offense having a one-year maximum term. This anomaly does not appear to have been within the contemplation of the Legislature." (*Eric J.*, at p. 537.)

"[Accordingly,] [a]lthough the Legislature clearly indicated its intent that the aggregation provisions of Penal Code section 1170.1, which limit consecutive terms to one-third of the middle determinate term, apply only in imposing sentence for felonies, we are not persuaded that the Legislature intended that this distinction apply in determining the maximum period of confinement for minors committed by the juvenile court. *The limitation of section 1170.1 reflects a legislative recognition that misdemeanor terms, unless imposed concurrently with a felony term, are served in local detention facilities and are not part of a continuous period of imprisonment under the supervision of the same correctional officials.* The judge who orders that a misdemeanor term be served consecutively to a previously imposed felony term thus retains discretion as to the length of the misdemeanor term and the power to maintain supervision over the defendant through probation by suspension of execution of the term for an appropriate period. The latter option would in many cases be foreclosed were the term limited to one-third of the maximum term since no realistic sanction for violation of probation would be available." (*Eric J.*, *supra*, 25 Cal.3d at pp. 537-538.)

14

The court went on to say, "It is apparent that the considerations leading to the limitation on physical confinement of minors differ markedly from those involved in adult sentencing. The physical confinement to which Welfare and Institutions Code section 726 refers is typically a commitment for a single continuous period of custody under the supervision of a single agency with a unitary rehabilitation plan. By directing in section 726 that the juvenile court measure the maximum period of confinement for 'multiple counts' in accordance with subdivision (a) of Penal Code section 1170.1, without restricting the application of the consecutive term provisions of that subdivision to felony counts, the Legislature recognized the different circumstances of juvenile and adult commitments, and indicated its intent that the aggregation provisions of section 1170.1 be applied whether the offenses committed by the minor are felonies or misdemeanors." (*Eric J.*, *supra*, 25 Cal.3d at p. 538.)

Here, defendant argues that not applying section 1170.1(a) to aggregated felony/misdemeanor terms in adult criminal proceedings subject to section 1170(h)(2) would result in the same anomaly, i.e., "that a [consecutive] misdemeanor sentence would be greater than a consecutive felony sentence, something the Legislature did not expect or contemplate." He contends that because aggregated felony/misdemeanor sentences ordered to be served in local custody rather than in state prison under section 1170(h)(2), such sentences are analogous to juvenile commitments, which are "part of a continuous period of imprisonment." He contends that if an aggregated felony/ misdemeanor sentence is served in a single institution, this differentiates it from such a

15

sentence that is not subject to section 1170(h)(2) and is therefore served partly in state prison and partly in a county jail.

The purpose of statutory interpretation is to effectuate the intent of the Legislature. (*People v. Ledesma* (1997) 16 Cal.4th 90, 95.) The Legislature is presumed to be aware of judicial interpretations of a statute. (*Id*. at pp. 100-101.) If the Legislature amends or reenacts the statute without changing the interpretation placed on that statute by the courts, "'the Legislature is presumed to have been aware of, and acquiesced in, the courts' construction of that statute. [Citations.]'" (*Ibid*.) The fact that courts have held at least since 1979 that section 1170.1(a)'s limitation on the length of consecutive sentences applies in adult cases only to felony sentences leads us to infer that if the Legislature had intended a different result when it amended section 1170.1(a) when it enacted the Realignment Act in 2011, it would have said so. Nothing in defendant's argument persuades us otherwise.

## DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PARTIAL PUBLICATION

McKINSTER
                    Acting P. J.

We concur:

MILLER
          J.

CODRINGTON
          J.

17